Okay, we're ready. We've already heard from you, but not your friend on this jurisdictional question. Let me just ask you if there's anything different about the posture of this case versus the Apple case on the jurisdiction or the jurisdictional question is precisely the same. And they've also agreed to add Uniloc 2017, so the issue hasn't arisen in this appeal, but I'll move on to the merits. I'm sorry, was that the... We moved in this case to add Uniloc 2017, they agreed to the motion. Okay, but that... They agreed to... They agreed to add Uniloc 2017 to the case. To cure the jurisdictional defect at the time of judgment. On that issue, and they didn't have... Didn't raise the fortress issue. It was not raised in this case. Okay. All right. But is it relevant here? I mean, this is the problem. Is it the same... If the facts had been developed, would there be a fortress issue? I'd have to look at the filing date of the case. Again, since it didn't come up in the case, I haven't gotten into that. But on the well-pled facts that haven't been objected to, we don't have that issue. No. Again, Your Honor, I haven't looked into the timing. The issue with the Apple case was that when the notice of appeal was filed. I don't think that applies here. That's probably why they didn't raise it. So you caught me by surprise. I have to go back and look at the record to confirm that. Turning to the merits. So in the patent here, which was filed in, I believe, April of 2000, the inventor saw a number of problems he listed with control devices for controlling things in your home, whether it's a TV or some other device. And his idea, which he thought was great, was to have a, right, we refer to it as a touchscreen method of control. And to use as the communication method between the controlling device and which had just been announced, but there were no Bluetooth devices available in the market at the time. But he thought this would be a great controller. That's what he built and filed a patent application on it. He tried to get a broad claim to just a touchscreen method of control. The patent office rejected that and he ended up with a more limited claim, which combined the touchscreen method of control with this communication method between the two devices, as the patent office allowed. Again, following up on the question of the last witness by Judge Plager, that's a device. It's a device which is improved over other devices, and there's nothing, frankly, in my view, abstracted off of it. Which claim, is claim one, whichever claim one, it's a method claim one? I'm using claim ten because it's specific to Bluetooth. But claim one is a broader description of the Bluetooth method, which is you send out a broadcast to find other devices in the area. So claim ten is an apparatus claim? Claim ten. Claim ten is a method claim, too. Well, one is a system claim. One's a method claim. It's a method, but it's a method. And one's a system claim. Claim ten is a method, right? Yes, it is. Let's look at the claim. They both say method. Claim one and claim ten both say a method. I think the invention of claim as method and as an apparatus, we used claim ten because that was the first set of claims. As a representative of the apparatus claims. Well, claim ten, you're talking about the 018 patent, aren't you? Let me just define the language of the patent, if I may. Claim ten is a dependent claim under claim one. Hang on. If you're looking at claim 11, claim 11 is the system claim. System claim and the handle in the 021. So the invention was claimed as a method and as a system, Your Honor. And what were the claims that were asserted in this case? Because I see a discussion of claim one. For purposes of simplifying, instead of discussing the method separately from the system, we used the method claims as representative. And the two that we talked about were one and ten. In the briefing, we focused on ten, which simply added the limitation that it's specifically the Bluetooth system. But claim one is a Bluetooth system without using the word Bluetooth. So is there any difference between the method and the system claims? Or do they rise and fall together? For one-on-one purposes, I don't see a difference between them, Your Honor. No one has argued there is. Returning now to the invention, I've been using a method claim for discussion. The method which the device employs is the two factors I talked about, the touchscreen method of control and using this communication system for one device to talk to the other. The district court said those claims are all directed to the abstract idea of wirelessly controlling remote devices. Well, that's the field of the invention. That existed before. The claims are drawn to how it's done, which is the combination of the touchscreen method and the particular Bluetooth method of communicating between the two devices. And of course, we covered that in the brief. The district court seems to have mixed up step one with step two. His response in step one was, well, yeah, you're doing that with generic devices. And he's wrong about that. There were no Bluetooth devices back then. They weren't being used for this purpose. And so there was no generic device used to practice the particular method. The claim to advance was to combine these two features. And that's where the claims were directed, not to the broad concept of wirelessly controlling remote devices. We move to step two. If we're, are you limiting it to the ones that use Bluetooth devices then and not the larger generic claims of claim one? No, in the sense that we have used claim 10 for discussion purposes because. Well, it seemed you suggested that the reason claim 10 was patent eligible was because it used the new technology of Bluetooth. But claim one doesn't talk about any kind of technology. Well, in its kind of specificity, it's all generic conventional components, isn't it? No, actually not. And this is why we used Bluetooth to make it easier to discuss. Yeah, but claim one doesn't cover Bluetooth. There are two provisions of the claim, which is the Bluetooth method of doing it. And those limitations of the claim, your honor, it's on page four of our brief. It's establishing a wireless connection between a transceiver of a control device and a remote device by broadcasting a message for locating remote devices within range of the transceiver and receiving a response from the remote device by using devices implementing, well, receiving a response from the remote device. This was the approach Bluetooth used, broadcasting and receiving a response from the messages. The only method being used in 2019 for that is Bluetooth. So we use that for our discussion purposes because we don't need a broader claim. But that is the approach, those two particular limitations. Anyway, returning to the court's decision about Bluetooth, I take it you referred to microwave communication of some sort. Referred to what, sir? By Bluetooth, you refer to some sort of wireless microwave communication. It is a radio communication, your honor. It is wireless. But the Bluetooth approach is, again, it's sending a broadcast, which anyone can listen to on the frequency. And then the responding device, they both have to have Bluetooth chips, sends back its address. And then the first device starts a pairing operation. So you then have a direct connection. And that's a different way of doing things from what was done before this application was filed. Can I move you back before your time runs out to the jurisdictional question? Because I was a little confused by what you said earlier. Because it didn't comport with what I recalled was in red, in the red brief. Their jurisdictional statement seems to embrace the same arguments and the same position that Apple laid out in the prior appeal. Am I wrong about that? They seem to be contesting jurisdiction. So a couple of things. The issue of the Unilaw 2017 issue, which I think this court resolved on May 24th, I think they piggybacked on that when they briefed it. But I think that issue is not in the case. To the extent there's a I can hear what you were saying. There's two jurisdictional arguments. One is the Unilaw 2017. They raised both of them in their jurisdictional statement. It read brief pages two and three. And I think the May 24th decision of this court and ADP resolved one of those issues. Well, what if we don't agree with that? I mean, you're saying that didn't deal with time of judgment. That dealt with the time of appeal, not time of judgment or time of filing. The May 24th decision, as your Honor well knows, deals with whether you can add the party in the middle of an appeal when the profility is transferred. What if they, has the record changed since this? I thought you said, and we can ask them obviously, that they agreed to your motion to amend or to add Unilaw 2017? Yes, and I think what Judge Taranto did was he allowed the addition subject to whatever jurisdictional arguments they want to make with respect to the rights of the parties. The issue of simply adding the party was something that they agreed to, and Judge Taranto granted. OK, and they still contest this. So the same issue about the fortress stuff, that is, do you agree that that's part of this appeal? They are piggybacking on Apple's argument, yes, your Honor. They haven't made it themselves to say, me too. The difference between the appeals, as I've mentioned before, was that when the notice of appeal was filed here, there wasn't, in Apple there was a problem, and that we weren't aware of it, but I think here the notice of appeal was filed after the issue didn't arise. But I have to sort through that. OK. So back to the merits, or? Well, you've got three minutes remaining. You can reserve the balance of your time or use it up. OK, then I'd like to talk just for a minute about step two in this particular, in the judge's opinion. And here there was what I call a cell spin problem in two respects. First of all, the judge relied on the cell spin district court case, which said that Bluetooth was generic, and what the district court there was actually talking about was 2007, not 2000. The other problem is this court's decision, cell spin I think came out on June 25th, in which what they said was a district court, there's not an obligation to say in the patent itself that things are not conventional or not generic. And the mistake the district court judge made in that case was imposing a burden on the patent owner to say in the patent that features are not conventional. The judge here did the same thing. He says, where does it say in the patent that these features are not conventional instead of imposing the burden on the other side to show a lack of conventionality? Again, when this patent was applied for in April 2000, Bluetooth wasn't conventional for any purpose. There were no products in the marketplace, and it was an open question what the communication would be used for. And maybe at some point people can argue obviousness, but that should not be an eligibility issue. When did the patent issue? Excuse me? When did this patent issue? Issue date was 2004, 2005. It was applied for in April 2000, which I think should be the relevant date for one-on-one purposes, but the actual issuance date is September 2003. Unless the board has other questions, I'll sit down. Thank you. Thank you. Good morning, Your Honors. May it please the court, Todd Landis on behalf of HTC America. Your Honors, I guess I'd like to address the jurisdictional issue since that's been going around this morning first. It is correct that Uniloc made a motion under Rule 43 to add Uniloc 2017 to this appeal. We did not oppose that motion, mainly because we were trying to take a little bit more of a pragmatical approach to this issue. We went on Section 101 down below. We felt as though no matter what happened down below, this was actually gonna come back. Okay, well let me just cut to the chase here. So I think even your friend on Apple conceded, it's your view that we have the authority at the appellate level to join Uniloc 2017. Yes, Your Honor. Right, so that cures one of the jurisdictional questions. Do you agree with Apple, if I understand Apple correctly, that there remains another jurisdictional question with regard to Fortress in the time of filing? Yes, Your Honor, and that is a standing issue which we don't believe can be waived. We decided to not brief that issue to this court, but rather to rely upon what Apple has done because we think whatever the court decides in the Apple case would have to apply equally to this one because the cases were in the same posture. So can you tell us, I think Judge Hughes alluded to this before, why this didn't come up before the district court judge, right, you're in a district, you're not before ALSA, you're before somebody else. Yes, we're in the district, Worcester District of Washington. Okay, did this issue come up at all? Was it raised, was it not raised because they didn't respond to discovery and you just didn't find out about it till too late? What happened? As my understanding, Your Honor, is that we didn't know about the issue. We didn't have discovery or insight into the Fortress agreements and what they were like at the time. So by the time we got to decision on 101, that information wasn't before us. We didn't have it to present. Isn't that your obligation at the earliest stage of the case to do discovery on jurisdiction? And you didn't do it. I know you can't waive jurisdiction, but at a certain point if you don't challenge it and don't make a record that allows a challenge, then in a sense you waive the ability to develop the record further, haven't you? I mean, here's the problem. Jurisdiction is usually based upon a well-fledged complaint. You agree with that, right? Yes. And so if you don't do any jurisdictional discovery, you don't challenge jurisdiction at all, you let the case go forward to final judgment, and so there's nothing in this record that would dispute jurisdiction, and then somehow in a related but different case, different jurisdictional facts come to light, how is it appropriate for you then to come into an appellate court after a final judgment in that case and say, look, we didn't develop these jurisdictional facts, but this other entirely different case did, and now you don't have jurisdiction? So, Your Honor, I guess I would answer that this way. I think it depends upon where the case is in the posture. I mean, at the beginning of the case, they well-feed a complaint. Well, I think my hypothetical assumed they had well-fledged jurisdictional facts, you made no challenge, you didn't attempt discovery, you didn't at any stage, at the time the judgment was entered, there was no dispute whatsoever at jurisdiction. Because in the... Because of developments in other cases, you're saying, wait a minute, they probably didn't have jurisdiction in this case either. Isn't that too late? Your Honor, I think under certain circumstances it could, but in this case, the well-fledged facts said that a particular entity owned all the rights to the patent. And did you challenge that? We did not, Your Honor. Did you ask for discovery into that issue? We did not because... So we're stuck with those facts, aren't we? We're stuck with those facts simply because we made a different motion to dismiss under Rule 12, Rule 12b-6, on the 101, that ended up getting decided in our favor. And so at that point in time, we were done with the case and had no ability to go get further discovery. I think if we had gotten that decided in a different matter... I mean, that's litigation choices, right? I mean, it seems to me that at a certain point, even if the case goes to jurisdiction that we have to independently address, if it wasn't developed in the facts of this particular case, we're not a fact-finding court. We can't order you out to go discovery. And why should we get a second shot at opening up this case where discovery on jurisdictional facts when you didn't attempt to preserve that right in the first place? Your Honor, I think... Frankly, again, I don't understand. I said this to your friend in the previous case. I don't understand why you're contesting any of this because you won on 101. And Your Honor, we really didn't contest it. I mean, we put a jurisdictional statement in that said that if the standing issue is decided one way, it should probably be decided the way in our case. So, on this case, let's just talk about this case. On the facts we have, assuming... And I don't think you seem to contest this, that we can cure the judgment, time of judgment problem by adding the Unilock 2017, that there was no challenge to jurisdiction at any point at the time of filing. Why don't we just cure it here and roll on the merits of your 101 issue? Your Honor, I actually agree. I think the 101 issue is so clear in this case that that's exactly what I think should happen. Your Honor, I would stand here before you and tell you that I'm not quite clear why Apple has pressed this point so much. I don't know. We decided not to press the point because we think the merits of the 101 are what should be decided. And that's why we didn't oppose Unilock's motion to bring Unilock 2017 into the case, into the appeal. Let me explore this with you. Assuming we conclude that it has to go back for fact-finding by the district courts and all the rest of that, are you in any prejudice by our doing that? And assume the opposite, that we decide we have jurisdiction and decide the merits. Do either of those positions prejudice you? The only prejudice to my client would be that they'd have to spend more time and money discovering those facts and waiting for their 101 appeal to get heard, because I think we'll be right back here on this same issue. That would be the only prejudice. Other than that, I can't stand it. You're doing the opposite of Apple. Apple says it will be prejudiced if we go forward without resolving the jurisdictional issue. You're arguing it would be prejudiced if we don't go forward. I'm actually confused by why Apple doesn't think it's going to be prejudiced by not going forward as well, but that is their position. Well, I mean, I understood what your friend said, which is they're, I don't know how many of these Unilock appeals are pending, and you're right. It's going to cost them extra time and money on this one, but if they prevail on the jurisdictional question, it will save them a lot of money down the road. That seems, I understand it. It seems like a sensible position for them. Your client is just in a different. And in reality, Your Honor, our client is in the same position. We have 10 cases pending with Unilock, so we're not in a very different position than Apple is. We just see these. But they're different than Apple. They're different than Apple. And are those others pending in DeKalb, too? No, they're in Washington. I think they're all in Washington, Your Honor. And Texas, sorry. So moving on to the merits, unless Your Honors have any further question about the jurisdictional statements. I think to start out, it might be of his discussion with my colleague from Apple. And I completely agree with Judge Plager. This is about the claims. And what Unilock wants to do is they want to argue about elements, and devices, and things that simply don't appear in the claims. And they're trying to get this court to agree that something passes mustard under 101 based upon a claim that doesn't appear in the patent. Their two focuses for eligibility are a touch screen or a touch screen method that is used in a Bluetooth environment, some combination of those things together. But when we look at claim 10, the only claim they argued about in this case, and the claim that I think I heard the lawyer from Unilock just mention was the claim that they're going to rise and fall on. That claim only mentions Bluetooth in the fact that the transceiver and the remote device are Bluetooth enabled. It doesn't say you have to ever use Bluetooth to do anything in the claim. It doesn't say the wireless connection is a Bluetooth connection. It doesn't say the message that's being broadcast is in Bluetooth format. It doesn't say the response being received is in Bluetooth format. It doesn't say anything about Bluetooth. Other than those two elements are Bluetooth enabled. That is the only mention of Bluetooth in the claim. And I would submit that this claim is a purely functional claim. In fact, when you look at the devices that are in the claim, and there are four of them, the transceiver, the remote device, the display device, and an input device, three of the four devices do nothing in the claim. They have no function in the claim. Unilock would argue that the transceiver is used to broadcast the message and receive the response. But in reality, the claim doesn't say that the transceiver broadcasts the message. And it doesn't say that the transceiver receives the response. Something is broadcasting a message. Something is receiving a response. But the claim is silent on what that something is. The same goes with the display device. You manifest the said remote device on display device, but it doesn't say what the display device does. It doesn't say how it does it. Input device is the same way. You register a contact provision on the input device, but it doesn't say how you do it, what's doing it, or what's unique about that. The elements of this claim, establishing a wireless connection, broadcasting a message, receiving a response, and transmitting a command, are simply well-known routine and conventional steps in establishing a wireless network and communicating across it. It's nothing different than what's been going on for years. And in fact, Judge Plager mentioned going all the way back to Patton right after World War II. When I was thinking about this case, I was thinking about the radio operators in World War II. They broadcast a message all the time and receive responses back all the time across their radios. They weren't necessarily directing it to one individual. They were directing who's ever on their frequency. So that's what we have in this case. This claim is just a broad functional claim that has no specific means or method to improve computer functionality, which is why it's abstract under claim one, which is under Alice step one, which is what the district court found. With respect to step two, there is no inventive concept. The first place we have to start in step two, again, is the claims. And what this court has said is, set aside the abstract idea. What else is in the claims that would transform that idea into a concrete concept? Well, once you set aside the abstract idea here, there's nothing else. It's simply absent of anything else. This claim has no specificity. None of the claims have any specificity. And under step two, that dooms this claim. How about claim 11? Yes, Your Honor. Claim 11 is the apparatus claim. And if we look at that claim, we can see that the beginning portions of it, and I would agree with Your Honor, bus, processor, transceiver, display device, input device, they're all physical things. But they're extremely abstract physical things. We're not exactly sure what they are. More importantly, the claim doesn't say they do anything. They're just a bunch of physical things that have no functionality, aren't doing anything within this claim. Then we get down to what the processor does. And when you get to the processor, it's for performing the same abstract method that in claim 1, the exact same abstract method. There's no specificity to it. There's no telling what's doing what, what's doing the establishing, what's doing the broadcasting. Actually, the second half of that claim is a method claim. Yes, Your Honor. I would agree that it's performing a method. I think this court has agreed that a claim written in this format is an OK claim and not an IPXL claim. But it does incorporate the method, certainly, of claim 1. And I would submit that this claim doesn't add anything, any specific components that would transform the abstract method into a concrete, into something concrete. Unless Your Honors have anything further for me, that's all I have. Thank you. Thank you. We had not thought to ask the district court for claim construction because we did not see an issue here. When you look at claim 1, which is a method claim, it talks about having a transceiver and a remote device. And then there's a step of broadcasting. We would think it would be evident that the transceiver does the broadcasting. That's why it's in the claim. My colleague here says, well, maybe it's there for some other purpose. We don't know. It's not really doing anything. So that's a claim construction issue, which I didn't see, somewhat bizarre. But when I listened to his argument, I started looking for other claims. I looked at claim 21, where it makes quite clear the transceiver does the transmitting. And that's why it's there. So I think if my colleague is raising a claim construction issue in this appeal, that would be a reason to deny 101. Frankly, I think the claim is pretty easily construed. The transceiver is doing the transmitting. That's why it's there. Questions? Thank you. We thank both sides in the case system. The final case for argument is 18-2340, United Technologies versus General Electric.